1

```
           IN THE UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF VIRGINIA
                     NORFOLK DIVISION


UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
v.                             )    Criminal Action No.:
                               )         2:15cr163
WILLIAM THOMAS DUNCAN, JR.,    )
                               )
          Defendant.           )



                 TRANSCRIPT OF PROCEEDINGS

              (Hearing Re: No Contact Order)


                      Norfolk, Virginia
                      December 6, 2017



BEFORE:         THE HONORABLE MARK S. DAVIS
                United States District Judge



Appearances:

     OFFICE OF THE UNITED STATES ATTORNEY
          By: ELIZABETH YUSI, ESQUIRE
              Counsel for the United States

     WOLCOTT RIVERS GATES, P.C.
          By: ADAM MICHAEL CARROLL, ESQUIRE
              Counsel for Defendant

     The Defendant appearing in person
```

           Paul L. McManus, RMR, FCRR Official Court Reporter

1              P R O C E E D I N G S

2

3        (Proceedings commenced at 10:09 a.m. as follows:)

4

5        COURTROOM DEPUTY CLERK: In Case No. 2:15cr163, the

6 United States of America v. William Thomas Duncan, Jr.

7        Ms. Yusi, is the government ready to proceed?

8        MS. YUSI: The government's ready. Good morning, Your

9 Honor.

10        THE COURT: Good morning, Ms. Yusi.

11        COURTROOM DEPUTY CLERK: Mr. Carroll, is the defendant

12 ready to proceed?

13        MR. CARROLL: The defendant's ready. Good morning.

14        THE COURT: Good morning, Mr. Carroll.

15        All right, Counsel, we are here, of course, based on a

16 petition on supervised release that was filed, it's

17 Document 115, filed November 8, 2017. And this petition was

18 filed after the Court became aware that there was to be a

19 hearing -- at that time it was scheduled for just a few days

20 away -- on the issue of whether or not Mr. Duncan would be on

21 the Responsible Individual List in North Carolina. And his

22 counsel in North Carolina had apparently communicated with Mr.

23 Carroll about the need to, at the hearing, have present

24 individuals covered by the no-contact provision of the

25 supervised release conditions which was also the subject,

essentially a recitation of a provision in the plea agreement itself. And so it seemed to me that we needed to have a hearing, and I asked the probation officer to prepare a petition once this was communicated to me so that we could have a hearing and try to figure out where all the interests and concerns and merits lay, and bring it to the fore. So that's why we're here.

I suppose that -- I don't know whether you all have had a chance to talk, Mr. Carroll, Ms. Yusi, but if you have, have you agreed on who would like to start here today?

MR. CARROLL: Not necessarily. I had said that I thought -- not sure how you wanted to conduct the hearing, but since I'm to show cause, I had assumed that I would be first.

THE COURT: That's what I was thinking.

MS. YUSI: And Your Honor, the parties have talked as well in terms of trying to find an agreeable resolution to this, and I think we do have one.

THE COURT: Okay. Do you want Mr. Carroll to present it?

MS. YUSI: Either way. I can.

THE COURT: Okay, Ms. Yusi. Thank you.

MS. YUSI: Your Honor, the parties spoke, and I understand -- we understand that his counsel in North Carolina may have to confront John Doe if there is a hearing or in a deposition. We have confirmed -- Probation has confirmed that the same concerns that we had when we were going through

1  sentencing and the imposition of the no-contact order are still
2  there and have been reaffirmed by a therapist; that it would be
3  detrimental to the child's progress should he be in the same
4  room with Mr. Duncan.  And so our proposal would be that his
5  counsel can contact or have contact in official proceedings with
6  John Doe to the extent necessary concerning the RIL.
7           THE COURT:  You said his counsel?
8           MS. YUSI:  His counsel, yes.  His counsel, the one
9  that provided the declaration.  However, that Mr. Duncan will
10 not be in the room.  Mr. Carroll said that they recently did a
11 deposition whereby Mr. Duncan could not or was not there, he was
12 present through a conference call, was able to email his counsel
13 simultaneously with any comments that he had.
14          THE COURT:  Okay.
15          MS. YUSI:  So that way the child would not know that
16 he was there during this -- or that he was even in the, in the,
17 I guess, vicinity of the area.
18          THE COURT:  Okay.
19          MS. YUSI:  And so our proposal would be that his
20 counsel can have contact in the official proceedings, Your
21 Honor, meaning that she's not contacting him outside of there
22 trying to talk to him one-on-one, and that Mr. Duncan will not
23 be present in the same room, at least physically.  Other means
24 whereby he can communicate with his counsel would be made
25 available.

```
 1                THE COURT:  So at the actual hearing --
 2                MS. YUSI:  Or deposition, Your Honor.
 3                THE COURT:  Or deposition.  But there's already been
 4   one deposition where the method you just described to me had
 5   taken place?
 6                MS. YUSI:  Yes.  I'm not sure if that was a deposition
 7   of John Doe or another witness or who it was.  I don't think it
 8   was of John Doe.  But I do believe that that method worked in
 9   that one and that they're agreeable to that.
10                THE COURT:  And at the hearing that same thing can
11   occur?
12                MS. YUSI:  Or the equivalent.  Whatever they can
13   figure out.  I'm not sure what the court's capabilities down
14   there are, but yes.
15                THE COURT:  All right.  Let's hear from Mr. Carroll.
16                Thank you, Ms. Yusi.
17                MS. YUSI:  Sure.
18                MR. CARROLL:  Thank you, Your Honor.
19                The deposition that occurred was with Dr. Schaefer,
20   who the Court might recall testified at the sentencing hearing.
21   And it apparently worked pretty well with my client on
22   conference call so he could hear the proceedings in the
23   deposition, was able to communicate with his counsel by email.
24   That was frankly as a result of travel restrictions.  And
25   although he would have probably been authorized to go attend
```

1  that deposition, it was just easier, frankly, to set up the
2  electronic --
3            THE COURT:  Okay.  Neither of the children were
4  present --
5            MR. CARROLL:  Not to my understanding --
6            THE COURT:  -- at that deposition?
7            MR. CARROLL:  -- no, sir.
8            To be clear, the proceedings in Rowan County currently
9  are just with respect to John Doe 2 listed in that order.  It
10 really has little to do with, based on my understanding,
11 anything to do with John Doe 1.
12           So this morning I spoke with Ms. Yusi about this
13 proposal.  It sounds like I think it would work functionally for
14 the deposition; however, like her, I do not know what the
15 court's capabilities are for the actual hearing itself.  In the
16 event that one of the protected parties, whether it be the minor
17 themselves or any guardian or caretakers would in fact be
18 present, be compelled to be there by Mr. Duncan's side or the
19 County's side.  I don't know what that court's capabilities are.
20 I'm a little hesitant to just say categorically we agree to
21 that.  I prefer to defer that to his Carolina counsel.  However,
22 we don't want to -- Mr. Duncan does not want to be in the room
23 with the child to contact him, to do anything, it's that he's
24 going to be compelled to go through this process and needs to
25 defend himself.

```
 1              So I would say that in the hearing, so long as there
 2   is the ability for him to participate actively in the hearing --
 3   and the reason why I say that, actively, is because I don't do
 4   family law practice, but my colleagues that do have told me
 5   that, unlike contract cases or other types of civil litigation,
 6   it's quite often throughout the examination of witnesses,
 7   presentation of testimony, the defendant is pretty heavily
 8   involved with the attorney back and forth.  And that happens on
 9   cases too.  But we want to make sure that he has the ability to
10   assist in his own defense and his counsel defending him in the
11   RIL litigation.
12              THE COURT:  I have no idea how it's handled there in
13   these hearings, but I would think they would have the exact same
14   concerns that we do when conducting these hearings.  And I don't
15   know whether they use screens to screen off children that may be
16   testifying from a defendant so that there's not a visual
17   contact.  It seems to me that would help.  If there was some
18   need to have direct, to have people in the same room with each
19   other, that might be one method.  But you know, it occurred to
20   me that this, as it does in juvenile court, the same kind of
21   concerns come to the fore in a RIL proceeding.  And so I'm
22   hesitant to become involved in that.  But these things are
23   interrelated.  And I'm glad to hear that you have reached --
24   well, are there to be any depositions now?
25              MR. CARROLL:  Well, to bring up the procedural
```

1  posture, currently November 15th was slated to be the hearing,
2  and my client's North Carolina counsel did not seek to depose
3  the minor, did not do some of the other things that she
4  ordinarily would have done because she had the no contact order.
5  What happened between that, however, was there were summary
6  judgment motions, essentially by both sides that were filed.
7  Those were convened on the 15th and argued and legal questions
8  were discussed in that hearing.  The judge then continued the
9  case in its entirety to December 13th.
10              Now, candidly, the North Carolina attorney told me
11 that, listen, you know, I'm not planning to bring our witnesses
12 that day, we think that we're going to get the ruling on that
13 day or sometime before, but it's not really postured in a status
14 hearing.  So what her plan is to do is, assuming the Court gives
15 the limited relief for her to participate fully in his defense,
16 she plans on asking the court that day for a writ of *habeas*
17 *corpus* to produce one of the minors, the JD2 minor, so she can
18 take the deposition.  And whether -- I believe the evidentiary
19 hearing will not actually proceed that day, although the North
20 Carolina counsel was a little bit equivocal on that.  She feels
21 like, given the inability to conduct any depositions she should
22 able to convince the judge, hey, the evidentiary hearing
23 shouldn't proceed, just rule on the motion to dismiss, and there
24 will be later hearings actually put on the docket for
25 resolution.

```
 1              THE COURT:  So is there some agreement -- to be clear,
 2  is there some agreement between you and the government about
 3  what happens if JD2 or JD1 is deposed by this attorney from
 4  North Carolina representing Mr. Duncan?
 5              MR. CARROLL:  Yes, Your Honor.  I believe we can agree
 6  to do just like the prior deposition where he is deposed,
 7  communicating by email with his counsel, and they're to be on a
 8  speakerphone so he can hear those instances.  I think that's --
 9              THE COURT:  Not physically present?
10              MR. CARROLL:  -- accomplishable.
11              THE COURT:  Okay.  So then --
12              MR. CARROLL:  It comes down to what --
13              THE COURT:  -- the hearing.
14              MR. CARROLL:  -- you keyed on, which is our court kind
15  of directing practically how the court in North Carolina would
16  function to guard against these same concerns.  I mean, like you
17  and others in this courtroom, you know, I've been involved in
18  cases where examination of a minor was done in chambers and, you
19  know, things like that.  I don't know practically what they will
20  do.  I think that it may be appropriate to fashion the relief
21  we're requesting here that perhaps indicates this Court's
22  preference and directs or -- and suggests that the court take
23  some protective measures to avoid direct contact given the
24  representations of the government.  I think that could be
25  appropriate.  I don't want to limit, however, Mr. Duncan from
```

1  being in the room when important matters and evidence are
2  decided in a evidentiary trial.
3          THE COURT: Well, it's certainly not appropriate for
4  this court to direct a state court or any other court about how
5  it is to do something. This is actually an administrative
6  procedure. I assume it's an administrative law judge appointed
7  by the state?
8          MR. CARROLL: Interestingly, no.
9          THE COURT: An Executive?
10         MR. CARROLL: Interestingly I believe it's actually a,
11 it's a judicial hearing. I assumed like our state court Child
12 Protective Services hearings where there's a finding of Level 1,
13 2 or 3 abuse, then a local conference, state conference reviews,
14 then administrative review ultimately appealable to a Circuit
15 Court with that, with the administrative, I guess, deference or
16 discretion given to the administrative agency. In fact, North
17 Carolina has -- and that's why I put that fact sheet with our
18 status report -- it has a judicial process upon notice and an
19 opportunity to be heard. So this is according to the North
20 Carolina attorney, Your Honor. They have all rule of civil
21 procedure discovery methods available to them. So it's a trial.
22 Appealable to the Court of Appeals in North Carolina, so I'm
23 told.
24         THE COURT: Which exhibit is that fact sheet?
25         MR. CARROLL: I believe it is Exhibit 1.

```
 1              THE COURT:  1.  Okay.
 2              MR. CARROLL:  Yes, Your Honor.  Exhibit 1.
 3              THE COURT:  Where does it say what you were just
 4  telling me?
 5              MR. CARROLL:  Yes, Your Honor.  So if you look,
 6  there's several bullet points, but it talks about the RIL was
 7  originally organized, but in 2010 the process was found to be
 8  unconstitutional because it provided no judicial review prior to
 9  placement on the RIL.  And then the next bullet point talks
10  about the new legislation going into effect requiring notice and
11  an opportunity to be heard prior to placement on the list, and
12  clarifying the judicial review process.
13              Then if you go to the procedures which are found on
14  the next page, it walks through the judicial review process.
15  And in conjunction with the declaration of Ms. Woodruff, Your
16  Honor, where it indicates that all the discovery methods
17  available to her, and frankly her description to me about how
18  this works, that's where I get the fact that this is a trial.
19              THE COURT:  That it's a trial before a state court
20  judge?
21              MR. CARROLL:  Yes, Your Honor.  If you look at the --
22  actually I have some of the pleadings, although I don't believe
23  I attached to my status -- no, I did.  Let me just double-check.
24              I'm sorry, maybe I did not attach them to my
25  pleadings.  But I do have some of the pleadings that have been
```

1 filed in the case, and they're filed in the Randolph County
2 General District Court of Justice, District Court Division.
3       THE COURT: Okay. So a state court judge. And it
4 would be inappropriate for me to direct them how to proceed, but
5 as you point out, they have the same concerns we do. I'd like
6 to, I'd like to know what they plan to do, however. How this is
7 going to occur before it happens. I don't want to be on the
8 back end of this.
9       MR. CARROLL: I'm told by Ms. Woodruff that she did
10 expect the rulings to already have occurred, or she was
11 surprised that she had not received notification from the Court
12 about the motions.
13       THE COURT: It's not that I'm saying if there is an
14 evidentiary hearing either on that day or she subsequently finds
15 out there's going to be an evidentiary hearing on that day and
16 she then one of the children is planning to be present, I'd like
17 to be notified, if she knows, what the plan is. And if she
18 doesn't, I want her to notify the judge there of this no-contact
19 order and the concerns this Court has about it. Not directing
20 what that does, I'm just saying, you know, to comply with his
21 conditions, his attorney must notify that judge of this Court's
22 concerns about being in the same room in contact so that that
23 judge can at least factor those concerns into that judge's
24 decision. And so if it gets continued and there's a later
25 evidentiary hearing, same thing. I just want to make sure that

1 that judge is apprised of the fact that there was this
2 no-contact provision and that a hearing was held on it and
3 representations were made to me about how any out-of-court
4 deposition or interview of the children would happen, and that
5 this Court recognized that it did not have the ability to in any
6 way control what a state court judge does, but that I am
7 requiring that Mr. Duncan have his attorney notify that judge of
8 these proceedings, this no-contact order, and my concerns about
9 potential harm to the children so that that judge can factor it
10 into what that judge does.
11             And as I said earlier, that judge knows much better
12 than I do how to address these issues and implement any
13 protective measures.  That's within that judge's prerogative.
14 But if I were that judge, I think it would be helpful to me to
15 know that there was such a no-contact in the supervised release
16 conditions, and in fact in the plea agreement, so that it
17 becomes part of the considerations and the knowledge that that
18 judge has in deciding how to implement, if any, protective
19 measures.
20             MR. CARROLL:  I think that's fair, Your Honor.
21             The one piece of the no-contact order that we were
22 primarily concerned about when it comes to the discovery aspects
23 of the case was that it limits taking any steps or attempt or
24 causing any steps to be taken to locate protected parties.  So
25 understanding the Court's comments about how we're to deal with

1  the hearing, however, is the Court willing to provide the
2  limited relief that we discussed so Mr. Duncan is not in the
3  room so that such that it's not violating the attempt to locate
4  provision?
5           THE COURT:  Absolutely.  I don't think him just
6  listening, but he is not to speak up while he's on any such
7  telephone conference.
8           MR. CARROLL:  Yes, Your Honor.
9           THE COURT:  And absolutely I don't want the child to
10 know that he's listening in.  I think that's a reasonable way,
11 if you all are in agreement, with proceeding that way.
12          MR. CARROLL:  It's been done in other depositions.
13 Not spoken to his North Carolina counsel, but he needs the
14 ability to locate this person to defend himself.
15          THE COURT:  If it's not agreeable, I want to know
16 about it.  I'm extremely hesitant to place any limits -- I'm
17 extremely hesitant to place limits on how a proceeding in a
18 state court takes place.  But there was an agreement here, and I
19 think that what you've suggested is imminently reasonable.  But
20 I want to be really careful here because it's a, it's troubling
21 to me --
22          MS. YUSI:  Your Honor --
23          THE COURT:  -- that these children are having to deal
24 with this.
25          MS. YUSI:  Your Honor, Rowan County Social Services, I

1 don't understand why they would, there would be any need to
2 physically locate the child.  I think Rohan County Social
3 Services that's involved with this knows exactly where this
4 child is and they can deal with finding the child.  There's no
5 reason to have any location efforts to physically locate this
6 child.
7         MR. CARROLL:  To be clear, exactly the opposite was
8 expressed to me by Ms. Woodruff, which was there's a
9 representation made that they didn't have custody of the child,
10 couldn't produce him, you need to figure that out with the
11 judge.  And so her plan was to ask the court for an order that
12 he be produced for purposes of conducting the deposition.  And
13 whether that's a communication issue between the Rohan County
14 attorney and Ms. Woodruff back to me, back to Ms. Yusi, I could
15 appreciate there may be something lost in translation; however,
16 that's what was represented to me.
17         THE COURT:  So you're asking permission for Mr. Duncan
18 to direct his attorney in North Carolina to request the court in
19 North Carolina for an order that this child, who is not under
20 the jurisdiction of the Department of Social Services or
21 whatever the relevant department is, to be produced for a
22 deposition?
23         MR. CARROLL:  The procedural mechanism that was
24 explained to me is that's what she would have to do if there was
25 not a -- and if Ms. Yusi is able to represent on their behalf,

1   that's great.  It would be easier if it's just done how we
2   schedule ordinary depositions, by agreements and times and
3   locations.  However, what was presented to me was there may be a
4   judicial step, a formal step that she needs to go through with
5   the court, and I told her I believed that would be an attempt to
6   take steps to locate, which may be violative of the order, and
7   so we needed permission to be able to take that step to locate
8   this protected party.
9           THE COURT:  Ms. Yusi?
10          MS. YUSI:  Your Honor, my understanding is the
11  probation officer recently spoke with Rohan County Social
12  Services, the social worker that has been assigned to John Doe 2
13  since the beginning of this situation, and that they do have
14  some sort of, they have custody of him still.  It's not formal.
15  That's my understanding right now.  I can't represent what it
16  is, but -- or I could just tell you what the --
17          THE COURT:  They have some jurisdiction over him?
18          MS. YUSI:  Yes.  Exactly, Your Honor.  And you know, I
19  understand that you need a court order or a writ of *habeas*
20  *corpus* to produce the child.  But I think that the proper
21  channel in this particular case would be to go through the
22  Social Services.  And I can talk to them to express any concerns
23  that the Court has.  But I think that they would agree that that
24  would be the proper channel, or they would prefer to do it that
25  way rather than having someone physically trying to locate the

17

1 child.

2 THE COURT: Yeah, I don't want Mr. Duncan's attorney
3 in North Carolina to be trying to conduct some interview of this
4 child.

5 MR. CARROLL: No, no.

6 MS. YUSI: But I don't even want him serving the
7 child.

8 MR. CARROLL: No, that's -- and frankly it's been
9 represented to me that the way they would do that would be
10 figure out who the guardian is and serve the guardian. To have
11 the guardian, you know, be properly served so the deposition can
12 take place.

13 THE COURT: Why are you shaking your head no, Ms.
14 Yusi?

15 MS. YUSI: I mean, that's locating child.

16 THE COURT: But if there's a court order --

17 MS. YUSI: I understand.

18 THE COURT: -- a *habeas*, it doesn't -- you think it
19 has to be served on the Social Services department but not on
20 the child's guardian?

21 MS. YUSI: I am asking that the Court suggest or order
22 that it be served through Social Services and not on that child.
23 And this is, you know, this can be agreed upon with Social
24 Services. Anyone can accept service, as long as the guardian
25 agrees to.

| | |
|---|---|
| 1 | THE COURT: Yeah, I want -- if the procedure is that |
| 2 | the child's guardian has to be served, I want to know before it |
| 3 | happens. Because I want the court or the issuing authority of |
| 4 | any subpoena or habeas or any other court order ordering the |
| 5 | production of a child, I want the person issuing that order to |
| 6 | know of these no-contact provisions and the agreement that you |
| 7 | all have reached about how it will take place before that |
| 8 | happens, so that that person, that issuing authority can decide |
| 9 | whether it wants to incorporate such agreement into any order or |
| 10 | whether it otherwise affects how the order will be worded or the |
| 11 | proceeding that it is ordering; i.e., a deposition, is to take |
| 12 | place. |
| 13 | MR. CARROLL: We had mentioned formalized. We meant |
| 14 | through the discovery processes like depositions, Your Honor, |
| 15 | not individual one-on-one interviews. |
| 16 | MS. YUSI: And Your Honor, I will contact the social |
| 17 | worker, I'll attempt to do that, but do it immediately and make |
| 18 | sure that they're aware that, you know, of our suggested means |
| 19 | of -- if there is a writ issued, that they're the ones to serve |
| 20 | it on his behalf. |
| 21 | THE COURT: Thank you. Are we -- you said this |
| 22 | proceeding is only as to JD2? Is there a separate effort |
| 23 | ongoing to with respect to JD1 for RIL? |
| 24 | MR. CARROLL: If the Court recalls, there were two |
| 25 | separate counties, and to my knowledge, JD1, Haywood County has |

1 | not elected to bring RIL proceedings at all.
2 |        THE COURT: Okay. Well, if that does take place, then
3 | the same thing needs to happen: The Court needs to know about
4 | it so that Ms. Yusi can know about it. And if you all want to
5 | reach agreement about that, you're welcome to. But if something
6 | happens with respect to JD1, I also want Probation to know about
7 | it, and then Probation will notify the Court and Ms. Yusi.
8 |        We're being careful, but it's important with a young
9 | child. And, you know, the children may -- the child may have
10 | felt like this is over, I've dealt with it and I'm moving on
11 | from any fear that I experienced, and to have to come back in to
12 | this is one level, but then to have to be present -- face or be
13 | present is a whole other level. And so I do think we have to be
14 | really careful and take every single step thoughtfully.
15 |        And frankly, this doesn't come in a vacuum. It comes
16 | in the context of me remembering all the facts, the way in which
17 | Mr. Duncan is sort of a take-control, Type-A kind of person, is
18 | my characterization of my recollection of how he operates. I
19 | don't want anything assumed. That's why I'm trying to be really
20 | careful about it. I don't want Mr. Duncan or his attorneys
21 | through him to assume anything. Anything coming close to
22 | contact has to be something that I know about before it happens.
23 |        Anything else, Ms. Yusi?
24 |        MS. YUSI: No, Your Honor. Thank you.
25 |        THE COURT: Mr. Carroll?

1      MR. CARROLL:  No, Your Honor.  Thank you.
2      THE COURT:  All right.  Thank you all.
3      (Whereupon, proceedings concluded at 10:40 a.m.)
4
                            - - -
5

6                      *CERTIFICATION*

7

8      *I certify that the foregoing is a true, complete and*
9  *correct transcript of the proceedings held in the above-entitled*
10 *matter.*
11
12           _____
13               Paul L. McManus, RMR, FCRR
14                    _____
15                        Date

Paul L. McManus, RMR, FCRR Official Court Reporter