```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                           Norfolk Division
```

**WILLIAM THOMAS DUNCAN, JR.,**

        **Petitioner,**

                                                     Criminal No. 2:15cr163
v.                                           Civil No. 2:19cv413

**UNITED STATES OF AMERICA,**

        **Respondent.**

<u>**OPINION AND ORDER**</u>

This matter is before the Court on William Thomas Duncan, Jr.'s ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, ECF No. 141, and the Government's Motion to Dismiss the § 2255 motion, ECF No. 159. Having reviewed the parties' briefs, the Court finds that a hearing is unnecessary. Accordingly, Petitioner's motion for a hearing is **DENIED**. ECF No. 143. For the reasons set forth below, the Government's motion to dismiss is **GRANTED**, and Petitioner's § 2255 motion is **DISMISSED** as untimely.

### I. FACTUAL AND PROCEDURAL HISTORY

On December 16, 2015, Petitioner was charged in an indictment with three counts: one count of interstate stalking in violation of 18 U.S.C. § 2261A(1) and two counts of destruction of records in violation of 18 U.S.C. §§ 1519 and 2. ECF No. 16. On February 18, 2016, a superseding indictment was filed charging Petitioner

with two additional counts of interstate stalking in violation of 18 U.S.C. § 2261A(1) and (2), for a total of five counts.  ECF No. 29.  On March 2, 2016, Petitioner pled not guilty to all counts and requested a jury trial.  ECF No. 33.

Petitioner's trial was set to begin on April 26, 2016.  ECF No. 33.  Pursuant to the agreed discovery order entered by United States Magistrate Judge Lawrence R. Leonard, the Government had certain discovery obligations to be fulfilled "no later than seven calendar days before trial," including:

> 3. The government shall permit the defendant to inspect and copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of his defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.
>
> 4. The government shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the government, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

ECF No. 20, at 1-2.  The discovery order provided an exception to this seven-day deadline with respect to Jencks and Giglio materials, with such materials required to be produced no later than five calendar days before trial.  Id. at 4.

On April 18, 2016, this Court held a hearing on the Government's motion to accommodate and protect child witnesses, ECF No. 54, after which the Court directed the parties to submit supplemental briefing on the issue. ECF No. 73. On the following day, April 19, 2016 (seven days before the original trial date), Petitioner appeared before the Court, with counsel, for a plea hearing. ECF No. 74. Pursuant to a written plea agreement, Petitioner pled guilty to Counts Four and Five of the superseding indictment (the destruction of records counts). ECF No. 75.

As reflected in the Presentence Investigation Report ("PSR") prepared for sentencing, Petitioner's advisory Guideline range was determined to be twenty-four (24) to thirty (30) months imprisonment. ECF No. 124. On August 18, 2016, the Court sentenced Petitioner to twenty-four (24) months imprisonment on Count Four and twenty-four (24) months imprisonment on Count Five, to be served concurrently, representing the low-end of the advisory Guideline range. ECF No. 98. The remaining three counts of the superseding indictment, the interstate stalking counts, were dismissed, as reflected in the written judgment entered on August 22, 2016. Id. Petitioner did not appeal his conviction or sentence, and his conviction therefore became final on September

6, 2016, fifteen days after the Court's entry of judgment.[1] See Fed. R. App. P. 4(b)(1)(A)(i), (b)(6); 26(a)(1)(C).

On August 9, 2019, nearly three years after his conviction and sentence became final, Petitioner filed the instant § 2255 motion. ECF No. 141. In his motion and accompanying memorandum, ECF No. 156, Petitioner alleges that while he was detained and awaiting trial on the federal charges, "the Rowan County Department of Social Services served notice of its intent to place Duncan on the 'Responsible Individuals List'—a list of North Carolina individuals deemed responsible for the abuse and serious neglect of a juvenile." ECF No. 156, at 3. Petitioner denied the allegations, retained North Carolina counsel, and sought judicial review in North Carolina state court. The "RIL" proceedings were stayed until Petitioner was released from federal custody in August 2017.

On January 5, 2018, pursuant to a subpoena duces tecum, the Rowan County Department of Social Services electronically transmitted to Petitioner's North Carolina counsel documents related to the RIL proceedings. Counsel downloaded the documents on January 9, 2018. Days later, the RIL proceedings were again stayed pending the disposition of an interlocutory appeal filed by

---

[1] Monday, September 5, 2016, the day on which Petitioner's judgment of conviction would have otherwise become final, was a federal holiday. See Fed. R. App. P. 26(a)(1)(C).

4

Petitioner.[2]  Nonetheless, Petitioner "continued to meet with [counsel] and diligently combed through the voluminous [responsive] documents."  Id. at 4.

On August 9, 2018, while the RIL appeal was still pending, Petitioner and his attorney "inadvertently discovered notes and investigative summaries related to the content of the forensic interviews of alleged [stalking] victims John Doe 1 and John Doe 2."  ECF No. 141, at 5.  Such notes and summaries, "authored by North Carolina social workers who observed the forensic interviews," ECF No. 156, at 4, were allegedly never produced to Petitioner by the Government at any point during the federal proceedings despite their purported exculpatory and impeachment value, in violation of Brady v. Maryland, 373 U.S. 83 (1963).  According to Petitioner, these alleged Brady materials "are largely inconsistent with the government's proffers concerning: (a) the allegations of neglect and abuse; and (b) the impetus for the alleged victims' fear of [Petitioner]."  Id. at 5-6.  As such, Petitioner claims that these materials "supported a trial defense to the 'intent' and 'substantial emotional distress' elements of counts one, two, and three."  Id. at 8.

Although Petitioner acknowledges that the allegedly suppressed materials relate to the stalking counts—the counts that were dismissed—he nevertheless claims that the suppressed

---

[2] This second stay was lifted in February 2019.  ECF No. 141, at 5.

documents were "material" to his decision to plead guilty to Counts Four and Five because: (1) "the decision to accept a negotiated resolution was based on the perceived strength of the government's evidence of guilt as to the dismissed counts"; and (2) Petitioner "was advised by counsel that he had a viable legal defense to counts four and five." ECF No. 156, at 14 (internal quotation marks omitted). Consequently, Petitioner contends that as a result of the Government's suppression of these materials, Petitioner's guilty plea to Counts Four and Five "was not entered knowingly, intelligently, and voluntarily," and that had the Government produced the materials to Petitioner, "there is a reasonable probability that [Petitioner] would not have pleaded guilty and would have insisted on exercising his Sixth Amendment right to a jury trial." ECF No. 141, at 7, 10. Petitioner further claims that his § 2255 motion is timely pursuant to 28 U.S.C. § 2255(f)(4) "because it was filed within one year of August 9, 2018—the date on which the facts supporting the claim presented could have been discovered through the exercise of due diligence." Id. at 6.

On February 10, 2020, the Government filed a motion to dismiss the § 2255 motion and a supporting memorandum, arguing that Petitioner's motion is untimely and, alternatively, that it lacks merit. ECF Nos. 159, 160. Petitioner filed a response on March 2, 2020, ECF No. 161, and the matter is now ripe for review.

## II. STANDARD OF REVIEW[3]

A § 2255 motion is essentially a statutory federal habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. United States v. Hadden, 475 F.3d 652, 663 (4th Cir. 2007). To obtain § 2255 relief, a petitioner bears the burden of proving that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

Additionally, the statute establishes a one-year limitations period within which a petitioner must file a § 2255 motion. 28 U.S.C. § 2255(f). Such period begins running on the latest of the following four dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

---

[3] Because the Court finds that Petitioner's § 2255 motion is time-barred, the instant Opinion and Order does not recite the legal standard regarding Brady materials.

7

>   (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>   (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id. As relevant here, with respect to § 2255(f)(4), "[t]ime begins when the [petitioner] knows (or through diligence could discover) the important facts, not when the [petitioner] recognizes their legal significance." United States v. Pollard, 416 F.3d 48, 55 (D.C. Cir. 2005) (first alteration in original) (quoting Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000)). In addition, "[i]t is the petitioner's burden to prove that he or she exercised due diligence." United States v. Crawley, No. 3:07cr488, 2012 WL 32402, at *2 (E.D. Va. Jan. 5, 2012) (citing DiCenzi v. Rose, 452 F.3d 465, 471 (6th Cir. 2006)).

### III. DISCUSSION

Petitioner argues that his § 2255 motion is timely pursuant to 28 U.S.C. § 2255(f)(4) because he filed his § 2255 motion within one year of discovering the allegedly suppressed materials. The Government responds with two independent arguments. First, the Government provided Petitioner's counsel access to the video recordings of the forensic interviews themselves—the basis of the notes and summaries that Petitioner's § 2255 motion identifies as "new evidence"—prior to sentencing. ECF No. 160, at 12-15.

Because the facts supporting Petitioner's claim were available to him before the entry of judgment, the Government contends, § 2255(f)(4) has no application here. Id. at 14. Rather, pursuant to § 2255(f)(1), Petitioner was required to file his § 2255 motion within one year of the date that his judgment of conviction became final—September 6, 2016. Id. Consequently, Petitioner's August 9, 2019 filing came nearly two years after the one-year limitations period expired.[4]

Second, the Government contends that even if § 2255(f)(4) controls, Petitioner's § 2255 motion is still untimely. Id. at 16-19. The Government points out that although Petitioner did not discover the relevant materials until August 9, 2018, he was nonetheless in possession of them beginning seven months prior in January 2018. Id. at 16. According to the Government, given that § 2255(f)(4) is triggered on "the date on which the facts supporting the claim or claims presented <u>could have been discovered through the exercise of due diligence</u>," 28 U.S.C. § 2255(f)(4) (emphasis added), the one-year limitations period began running well before the date of actual discovery and as early as January 2018, because a person exercising reasonable diligence would have discovered the materials much sooner. See id. at 18.

---

[4] In the same vein, the Government argues that Petitioner's <u>Brady</u> claim is procedurally defaulted because it was not raised in the district court and/or on direct appeal and because Petitioner cannot demonstrate either cause and prejudice or actual innocence. ECF No. 160, at 27-28.

9

As to the merits of the § 2255 motion, the Government argues: (1) Supreme Court and Fourth Circuit precedent foreclose the impeachment and exculpatory aspects of Petitioner's Brady claim in light of his guilty plea; (2) the exculpatory aspect of Petitioner's Brady claim is independently foreclosed given that "the materials at issue pertain solely to counts to which [Petitioner] did not plead guilty and thus of which he was not convicted"; and (3) in any event, Petitioner has failed to demonstrate the materiality of the documents at issue. ECF No. 160, at 19-27.

The Court concludes that Petitioner's § 2255 motion is time-barred for the two independent reasons advanced by the Government.[5] With respect to the Government's first argument, there is no dispute that counsel for the Government gave Petitioner's counsel

---

[5] At the time Petitioner filed the instant § 2255 motion, he was on supervised release. However, this Court's records indicate that Petitioner's supervision terminated on August 15, 2020, which would ordinarily render his § 2255 motion moot. See Grant v. United States, No. 2:17cv43, 2019 WL 2202899, at *2 (M.D. Ala. Apr. 2, 2019) (stating that "once a prisoner is released from incarceration and is no longer being supervised, his habeas petition no longer presents a live case or controversy and the case becomes moot," unless the petitioner "can demonstrate some 'collateral consequence' that persists beyond the expiration of the sentence and is 'likely to be redressed by a favorable judicial decision'" (quoting Spencer v. Kemna, 523 U.S. 1, 7 (1998))); Stewart v. United States, No. 5:08cr18, 2012 WL 7177064, at *1 (E.D.N.C. Oct. 18, 2012) ("[W]hen Stewart filed her motion to vacate on March 13, 2012, she was in federal custody and thus her motion was viable at that time. Since then, however, Stewart has been released from custody and is no longer subject to supervision. Her motion to vacate has therefore become moot and should be dismissed."). Nevertheless, because the parties submitted their briefs when Petitioner was still on supervision and thus did not consider the issue of mootness, and because the Court finds that the § 2255 motion is time-barred, the Court does not address whether Petitioner's motion is moot.

the opportunity to view and listen to video recordings of the forensic interviews of the alleged stalking victims on August 10, 2016 (after Petitioner's guilty plea and eight days prior to sentencing), as the Government initially intended to play excerpts of the recordings at sentencing in response to a factual objection to the PSR raised by the defense.[6] ECF No. 152-2, -3; ECF No. 154 ¶¶ 3, 5. Defense counsel turned down the opportunity to review the recordings and objected to their use at sentencing. ECF No. 154 ¶ 5 (stating that counsel "believed that use of the interviews was not relevant to determine the PSR factual objections, did not review them, and, ultimately, objected to the same at sentencing"). The Court did not rule on the objection, however, as the Government ultimately withdrew its motion to admit the video recordings. ECF No. 112, at 25:17-29:22.

Although Petitioner acknowledges that the Government provided defense counsel the opportunity to view the video recordings prior to sentencing, he states that the recordings "were not reasonably available because [Petitioner] was detained" and because counsel "had no reason to view the interviews after the government agreed to dismiss counts one, two, and three." ECF No. 161, at 2. Such arguments are unconvincing. That counsel deemed the video

---

[6] Due to the sensitive nature of the recordings' content, rather than electronically transmit or provide copies of the recordings to Petitioner's counsel, the Government offered counsel the opportunity to view the recordings at the U.S. Attorney's Office. ECF No. 152-2, -3; ECF No. 154 ¶¶ 3, 5.

recordings of the interviews irrelevant and thus declined the opportunity to view them prior to sentencing is immaterial to the central question of whether such opportunity was presented in the first instance. And here, it is undisputed that it was. Moreover, Petitioner provides no explanation as to why the fact of his detention prior to sentencing in any way impacted his counsel's ability to view such recordings at the U.S. Attorney's Office. Simply put, Petitioner's counsel was provided access to the interview recordings prior to sentencing such that the "facts" underlying Petitioner's § 2255 motion "could have been known" before the judgment of conviction was final.[7] Abdullah v. United States, No. 1:10cv815, 2012 WL 4475730, at *2 (M.D. Ala. July 20, 2012); see also Pollard, 416 F.3d at 55 (noting that § 2255(f)(4) concerns "when the [petitioner] knows (or through diligence could discover) the important facts, not when the [petitioner] recognizes their legal significance" (quoting Owens, 235 F.3d at 359)); United States v. Smith, No. 3:10cr210, 2017 WL 4249632, at *3 (E.D. Va. Sept. 25, 2017) ("[T]o obtain a belated commencement of the limitation period [pursuant to § 2255(f)(4)], the applicant must explain why a reasonable investigation would not have

---

[7] Although Petitioner's motion centers on notes and summaries generated during and in response to the forensic interviews, and not on the video recordings of the interviews themselves, the content of such notes and summaries presumably reflects the content of the interviews such that the facts underlying Petitioner's motion were discoverable by viewing the video recordings, and Petitioner does not persuasively argue otherwise.

12

unearthed the facts prior to the date on which his conviction became final.").[8] As such, § 2255(f)(1), not § 2255(f)(4), provides the proper limitations period. See McRand v. United States, No. 1:17cv264, 2018 WL 1939328, at *3 (S.D. Ala. Mar. 20, 2018) (finding § 2255(f)(4) "inapplicable" where the petitioner "was aware of the facts" underlying his § 2255 motion "at or before sentencing" (emphasis added)); 28 U.S.C. § 2255(f) (stating that the one-year limitations period "run[s] from the latest of" the four relevant dates (emphasis added)). Because Petitioner failed to file his § 2255 motion within one year of the date that his judgment of conviction became final, his motion is time-barred and is therefore **DISMISSED.**

Alternatively, assuming that application of § 2255(f)(4) is appropriate in this case, the Court finds that Petitioner's § 2255 motion is time-barred. Petitioner contends that his § 2255 motion is timely under § 2255(f)(4) because he filed it exactly one year after "inadvertently" discovering the alleged Brady materials. According to Petitioner, in the Brady context, the one-year limitations period under § 2255(f)(4) "must run from the date of . . . actual discovery." ECF No. 156, at 8 (emphasis added). Acknowledging a lack of Fourth Circuit precedent on this issue,

---

[8] If Petitioner truly had a viable defense to Counts Four and Five as he now claims, it would have been entirely "reasonable" for counsel to continue investigating the evidence as to Counts One, Two, and Three even after Petitioner pled guilty.

13

Petitioner relies on decisions of other circuit courts of appeals in advocating for such a (seemingly per se) rule. See id. (citing Willis v. Jones, 329 F. App'x 7, 17 (6th Cir. 2009) (unpublished); Starns v. Andrews, 524 F.3d 612, 614, 619 (5th Cir. 2008); Rinaldi v. Gillis, 248 F. App'x 371, 380 (3d Cir. 2007) (unpublished)). To adopt the rule that Petitioner proposes, however, would contravene the plain text of § 2255(f)(4), which states that the one-year limitations period begins on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4) (emphasis added); see also Cargill v. United States, No. 8:08cr204, 2010 WL 11606804, at *2 (D. Md. Feb. 5, 2010) ("The one-year limitation period does not run from the actual discovery of facts supporting a collateral attack, but rather from the date on which those facts could have been discovered through the exercise of due diligence."). Nor do the cases cited by Petitioner—cases that involve facts much different than those presented here—persuade this Court to carve out such a "Brady exception" to § 2255(f)(4) in this case.

As such, the Court considers all relevant facts, including those preceding the date of actual discovery. Here, it is undisputed that Petitioner's counsel electronically received the relevant materials on January 5, 2018, and downloaded such materials four days later. Approximately seven months elapsed

14

before Petitioner and his counsel "inadvertently discovered" the forensic interview notes and summaries, and approximately one year and seven months elapsed before Petitioner filed the instant motion. To demonstrate due diligence, Petitioner claims that despite the stay of the North Carolina RIL proceedings, Petitioner "continued to meet with [counsel] and diligently combed through the voluminous documents related to this matter." ECF No. 156, at 4 (citing ECF No. 141-1 ¶ 6). Petitioner further states that he lives in Virginia Beach and that his "travel to North Carolina during this period was complicated by supervised release restrictions." Id. at 4 n.3. Such conclusory statements are insufficient to demonstrate that, through the exercise of due diligence, Petitioner could not have discovered the relevant facts sooner than August 9, 2018. Indeed, Petitioner provides no elaboration of his description of the responsive documents as "voluminous." Moreover, Petitioner does not specify in what manner or the extent to which Petitioner's travel to North Carolina was "complicated by supervised release restrictions" nor adequately explain why Petitioner's physical presence was even necessary for his RIL counsel to review the responsive documents.

Somewhat contrary to his claim that he and his counsel regularly met and "diligently combed through the voluminous documents" over the seven-month period, Petitioner also argues that the relevant materials could not have been discovered sooner

15

because there was no reason to review the subpoenaed documents given that the RIL proceedings were stayed shortly after receiving such documents in January 2018. In this Court's view, however, § 2255(f)(4) does not permit a petitioner to delay the commencement of the one-year limitations period when the petitioner, represented by counsel, is in <u>actual possession</u> of the important facts but fails to discover them for a period of seven months simply because he subjectively identifies "no reason" to search for them. Cf. <u>Pollard</u>, 416 F.3d at 55. Rather, such provision requires the exercise of due diligence—an objective inquiry that is not dictated by the timeline of collateral state proceedings. <u>See</u> 28 U.S.C. § 2255(f)(4). Although due diligence "does not require a [petitioner] to undertake repeated exercises in futility or to exhaust every imaginable option," it "at least require[s] that a [petitioner] make <u>reasonable</u> efforts to discover the facts supporting his claims." <u>Crawley</u>, 2012 WL 32402, at *2 (second alteration in original) (quoting <u>Anjulo-Lopez v. United States</u>, 541 F.3d 814, 818 (8th Cir. 2008)). And on these facts, the Court finds that Petitioner has failed to establish that he exercised such due diligence in discovering the facts underlying his motion. Consequently, Petitioner's § 2255 motion is **DISMISSED** as untimely.[9]

---

[9] In light of the Court's alternative dispositive findings that Petitioner's § 2255 motion is time-barred, the Court need not address the parties' arguments on the merits. Nevertheless, the Court notes its substantial doubt that Petitioner's § 2255 motion would succeed on the merits for the reasons articulated by the Government, namely, the allegedly suppressed documents relate to the counts that were <u>dismissed</u>, not the counts to which

16

**IV. CONCLUSION**

For the reasons stated above, Petitioner's motion for a hearing is **DENIED**. ECF No. 143. The Government's motion to dismiss is **GRANTED**, ECF No. 159, and Petitioner's § 2255 motion is **DISMISSED** as untimely, ECF No. 141.

Finding that the procedural basis for the dismissal of Petitioner's untimely § 2255 motion is not debatable, a certificate of appealability is **DENIED**. 28 U.S.C. § 2253(c); see Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 335-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-85 (2000). Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. Fed. R. App. P. 22(b); Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Fourth Circuit, he must do so **within sixty (60) days** from the date of this Opinion and Order. Petitioner may seek such a certificate by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

---

Petitioner pled guilty, and Petitioner has otherwise failed to establish that such documents are material—that is, that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Spicer v. Roxbury Corr. Inst., 194 F.3d 547, 559 (4th Cir. 1999) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).

17

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ _____
Mark S. Davis
Chief United States District Judge

Norfolk, Virginia
January  26 , 2021